# UNITED STATES DISTRICT COURT
for the
District of Arizona

| In the Matter of the Search of<br>*(Briefly Describe the property to be searched or identify the person by name and address)*<br>A White 2021 Volvo XC90; VIN# YV4BR0CL9M1756296; Bearing Arizona Temporary License Plate 1251R91; located at the United States Border Patrol Tucson Sector Headquarters in Tucson, Arizona | Case No. 21-5234MB |
|---|---|

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of <u>Arizona.</u>
(identify the person or describe the property to be searched and give its location):

**As further described in Attachment A.**

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

**As set forth in Attachment B.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before     9/10/21
                                                                                                *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.
☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge.

_____
                *(name)*
☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*          ☐ for  days *(not to exceed 30)*
                                                                              ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: August 27, 2021 @ 4:17 pm   /s/ Deborah Fine
                                                                                                *Judge's signature*

City and State: <u>Phoenix, Arizona</u>                                    <u>Honorable Deborah M. Fine, U.S. Magistrate Judge</u>
                                                                                                  *Printed name and title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

A White 2021 Volvo XC90; VIN# YV4BR0CL9M1756296; Bearing Arizona Temporary License Plate 1251R91; located at the United States Border Patrol Tucson Sector Headquarters in Tucson, Arizona.







## **ATTACHMENT B**
## **THINGS TO BE SEARCHED FOR AND SEIZED**

1. Any evidence of alien smuggling, including but not limited to papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, records and/or ledgers.

2. Indicia of occupancy and/or ownership of the Volvo, including mail showing a person's address, receipts, vehicle title, registration; identification cards, and photographs of the items inside the vehicle.

3. Any records and information found within the digital contents of any electronic storage media and cellular phones seized from the Volvo, including:

   a. all information related to transporting aliens, pick up locations, drop off locations, telephone numbers, names, or any other identifying information);

   b. all bank records, checks, credit card bills, account information, or other financial records;

   c. any information recording schedule or travel;

   d. evidence of who used, owned, or controlled the electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

   e. evidence indicating how and when the electronic storage media were accessed or used to determine the chronological context of electronic

  storage media access, use, and events relating to crime under investigation and to the electronic storage media user;

 f. evidence of the attachment to an electronic storage medium of another storage device or similar container for electronic evidence;

 g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the electronic storage media;

 i. evidence of the times the electronic storage media were used;

 j. passwords, encryption keys, and other access devices that may be necessary to access the electronic storage media;

 k. records of or information about Internet Protocol addresses used by the electronic storage media;

 l. records of or information about the electronic storage media's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

 m. contextual information necessary to understand the evidence described in this attachment.

  As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as prints, slides, negatives, videotapes, motion pictures, or photocopies). This shall include records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other

audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the computer, electronic device, or other storage medium.

4. Photographs and/or video of the vehicle and the things seized.

5. Any objects or containers including but not limited to water bottles, jugs, beer cans, cigarette butts, clothing, or any object or consumable item which may contain DNA and/or fingerprints.

6. United States currency, financial instruments, financial statements, and/or papers documenting financial transactions relating to, obtaining, transferring, laundering, concealing, or expending of money or other items of value made or derived from smuggling of aliens.

FAX or Internet

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of:
A White 2021 Volvo XC90; VIN# YV4BR0CL9M1756296; Bearing Arizona Temporary License Plate 1251R91; located at the United States Border Patrol Tucson Sector Headquarters in Tucson, Arizona

) 
) 
) Case No. 21-5234MB
) 
) 

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, Border Patrol Agent Nathaniel M. Trueblood, a federal law enforcement officer for the government, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

**See Attachment A.**

located in the District of Arizona, there is now concealed *(identify the person or describe the property to be seized):*

**See Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

[X] evidence of a crime;
[X] contraband, fruits of crime, or other items illegally possessed;
[X] property designed for use, intended for use, or used in committing a crime;
[ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1324(a)(1)(A)(ii) | Transporting Illegal Aliens |

The application is based upon the following facts:

[X] Continued on the attached sheet (see attached **Affidavit**).
[ ] Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Tracy Van Buskirk *JVB*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____

*Applicant's Signature*

Nathaniel M. Trueblood, Border Patrol Agent
*Printed Name and Title*

**Sworn by Telephone**

Date: August 27th, 2021 @ 4:17pm

*Judge's Signature*

City and State: Phoenix, AZ

Hon. Deborah M. Fine
United States Magistrate Judge
*Printed Name and Title*

## ATTACHMENT A

## PROPERTY TO BE SEARCHED

A White 2021 Volvo XC90; VIN# YV4BR0CL9M1756296; Bearing Arizona Temporary License Plate 1251R91; located at the United States Border Patrol Tucson Sector Headquarters in Tucson, Arizona.







## ATTACHMENT B

## THINGS TO BE SEARCHED FOR AND SEIZED

1. Any evidence of alien smuggling, including but not limited to papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, records and/or ledgers.

2. Indicia of occupancy and/or ownership of the Volvo, including mail showing a person's address, receipts, vehicle title, registration; identification cards, and photographs of the items inside the vehicle.

3. Any records and information found within the digital contents of any electronic storage media and cellular phones seized from the Volvo, including:

    a. all information related to transporting aliens, pick up locations, drop off locations, telephone numbers, names, or any other identifying information);

    b. all bank records, checks, credit card bills, account information, or other financial records;

    c. any information recording schedule or travel;

    d. evidence of who used, owned, or controlled the electronic storage media at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, correspondence, and phonebooks;

    e. evidence indicating how and when the electronic storage media were accessed or used to determine the chronological context of electronic

      storage media access, use, and events relating to crime under investigation and to the electronic storage media user;

f. evidence of the attachment to an electronic storage medium of another storage device or similar container for electronic evidence;

g. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the electronic storage media;

i. evidence of the times the electronic storage media were used;

j. passwords, encryption keys, and other access devices that may be necessary to access the electronic storage media;

k. records of or information about Internet Protocol addresses used by the electronic storage media;

l. records of or information about the electronic storage media's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any internet search engine, and records of user-typed web addresses;

m. contextual information necessary to understand the evidence described in this attachment.

    As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as prints, slides, negatives, videotapes, motion pictures, or photocopies). This shall include records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other

audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the computer, electronic device, or other storage medium.

4. Photographs and/or video of the vehicle and the things seized.

5. Any objects or containers including but not limited to water bottles, jugs, beer cans, cigarette butts, clothing, or any object or consumable item which may contain DNA and/or fingerprints.

6. United States currency, financial instruments, financial statements, and/or papers documenting financial transactions relating to, obtaining, transferring, laundering, concealing, or expending of money or other items of value made or derived from smuggling of aliens.

## **STATEMENT OF PROBABLE CAUSE**

I, Nathaniel Trueblood, being duly sworn, depose and state the following:

### **Background and Experience of Affiant**

1. I have been employed as a Border Patrol Agent (BPA) since June 19, 2008. In the course of my official duties, I am charged with the investigation of crimes relating to alien smuggling. I am presently a Task Force Officer (TFO) assigned to the Department of Homeland Security Border Enforcement Task Force (BEST), which consists of agents detailed from United States Border Patrol (USBP) and Homeland Security Investigations (HSI). I am a graduate of the USBP Academy at the Federal Law Enforcement Training Center (FLETC) in Artesia, New Mexico. At the academy, I received basic training in investigating alien smuggling, identifying immigration violations, and enforcing numerous immigration and customs laws within the United States. I have participated in numerous alien smuggling-related investigations, many of which involved the arrest of persons for alien smuggling offenses. In those cases, I conducted interviews with the arrested persons and with their associates. Through these interviews and investigations, I have gained a working knowledge and insight into the activities and operations of alien smugglers.

2. The facts contained in this affidavit are based upon my investigation of this case, including information provided to me by law enforcement officers and other persons in connection with the investigation into Matthew ARBIZO (ARBIZO) in relation to Transporting Illegal Aliens in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

1

3. Because this affidavit is being submitted for the limited purpose of obtaining a search warrant, your Affiant has not included every fact known to your Affiant concerning this investigation. Your Affiant has set forth only the facts that your Affiant believes are necessary to establish probable cause for a search warrant.

### Introduction

4. For the reasons set forth below, there is probable cause to believe that evidence of 8 U.S.C. § 1324(a)(1)(A)(ii) will be found in the white 2021 Volvo Xc90 bearing Arizona temporary plate 1251R91 and VIN# YV4BR0CL9M1756296, and any cellular telephones inside the Volvo, as more fully described in ATTACHMENT A. Accordingly, this application requests authority to search for evidence of this crime, as more fully described in ATTACHMENT B.

### Investigation

5. On October 24, 2018, Sonoita Border Patrol agents assigned to the State Route 83 (SR-83) Border Patrol Checkpoint encountered a red 2000 Ford Ranger. Border Patrol Agent Francisco Silva directed the driver, ARBIZO, to pull over to the secondary inspection area. ARBIZO accelerated away from the checkpoint and pulled into a dirt driveway where he absconded. Responding agents apprehended a Mexican National, identified as Cristino Amado RODRIGUEZ-Toribio, who was illegally present in the U.S. During a custodial interview, RODRIGUEZ-Toribio stated that after he illegally crossed the U.S./Mexico international border, he was picked up by the driver of the Ford Ranger. Agent Silva was shown a photo lineup consisting of six subjects and was able to pick ARBIZO out of a photographic lineup as the driver of the Ford Ranger.

2

6. On August 11, 2021, at approximately 10:01 a.m., Pinal County Sheriff's Deputy Oulono Folau encountered a white 2021 Volvo Xc90 bearing Arizona temporary license plate 1251R91 at Picacho Elementary school located at 17865 S Vail Rd, Picacho, Arizona. Deputy Folau witnessed a male subject exiting the driver's side of the vehicle and walk toward the school entrance. Deputy Folau made consensual contact with the male subject while he was walking towards the school. The male subject stated he was there to pick up hisg nephew and continued into the school. Deputy Folau asked the male subject for his name, and he responded "Matthew Arbizo" from Tucson, Arizona.

7. Deputy Folau returned to his patrol vehicle and parked his vehicle a couple spaces away from the Volvo Xc90 to continue to observe it. Approximately 15 minutes later, Deputy Folau became suspicious that ARBIZO was not returning to his vehicle. Deputy Folau asked someone leaving the school where the front office was located and realized ARBIZO walked past it.

8. Deputy Folau walked up to the Volvo Xc90, looked through the windshield and saw four adult males, identified as Jose DIAZ-Aguilar (DOB: XX/XX/2001), Agustin FLORES-Yanyez (DOB: XX/XX/1989), Luis HERNANDEZ-Arista (DOB: XX/XX/1997), and Orlando MIRANDA-Hernandez (DOB: XX/XX/1999) who were determined to be Mexican Nationals illegally present in the U.S. Deputy Folau ran ARBIZO's name in law enforcement databases and found ARBIZO's Arizona driver's license photograph. Based on that photograph, Deputy Folau positively identified ARBIZO was the subject encountered driving the Volvo and entering the school.

9. During custodial interviews, all four Mexican Nationals gave similar statements about paying smuggling fees to illegally enter the U.S. and walking approximately two days before being picked up by a white sports utility vehicle (SUV). All four Mexican Nationals were presented with a six-pack photographic lineup. Augustin FLORES-YANEZ and Orlando MIRANDA-HERNANDEZ partially identified the driver as photograph # 2 (ARBIZO). Jose Manuel DIAZ-AGUILAR positively identified the driver as photograph #2 (ARBIZO).

10. The white 2021 Volvo Xc90 bearing Arizona temporary license plate 1251R91 is registered to J. Exstrom with an address in Lincoln, Nebraska. On August 24, 2021, I had telephonic correspondence with J. Exstrom and asked for consent to search the Volvo Xc90. J. Exstrom gave consent to search the Volvo Xc90.

11. Deputy Folau informed me that when he looked through the Volvo's windows, he was able to see at least one cellular telephone. Based on my training and experience I know that people who transport aliens commonly use cellular telephones and other electronic devices to communicate with co-conspirators and the people they are transporting through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Therefore, evidence related to alien smuggling activity is likely to be found on any electronic storage media and cellular telephones found in the Volvo Xc90 driven by ARBIZO.

### Digital Evidence Stored Within a Cellular Telephone

12. As described in ATTACHMENT B, this application seeks permission to search for records and information that might be found in the contents of any cellular

4

12. As described in ATTACHMENT B, this application seeks permission to search for records and information that might be found in the contents of any cellular telephones found in the Volvo. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

13. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violation set forth in this Affidavit will be stored on cellular telephones for at least the following reasons:

    a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

    b. Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

    c. Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years

5

after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

   d. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   14. *Forensic evidence.* As further described in ATTACHMENT B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the cellular telephone because:

   a. Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

6

detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

   c. A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

7

d.  The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

15. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of any cellular telephones found in the Volvo, including the use of computer-assisted scans.

16. *Manner of execution.* Because this warrant seeks permission to examine a vehicle that is already in law enforcement's possession, and the vehicle's registered owner has consented to the search of the vehicle, the execution of this warrant does not involve the physical intrusion onto a residence. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### Things to be Searched for and Seized

17. Based on the foregoing, your Affiant is seeking a search warrant to search the abandoned white 2021 Volvo Xc90 bearing Arizona temporary plate 1251R91 and VIN# YV4BR0CL9M1756296 and any cellular telephones found inside.

18. Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in ATTACTHMENT B will be found the 2021 Volvo Xc90 described in ATTACHMENT A, which is currently located at the Tucson United States Border Patrol Sector Headquarters in Tucson, in the District of Arizona.

19. Based on your Affiant's training, education, and experience suspects often leave behind evidence from the commission of the offenses they commit. Thus, your Affiant is seeking a warrant to search for evidence related to Transporting Illegal Aliens. Including, but not limited to, ledgers, receipts, currency, firearms, items with biological evidence as described for fully in ATTACHMENT B.

20. Additionally, based on your Affiant's training and experience, it is also known that indicia of ownership and/or occupancy are important in a criminal case. It can help establish possession or control of the vehicle, knowledge, and intent. Based on your Affiant's training and experience, indicia of ownership and occupancy includes such things as: mail showing a person's address, receipts, vehicle title, registration; identification cards, and photographs of the items inside the vehicle.

22. Based on the foregoing, your Affiant believes there is probable cause to support that a violation of federal law has occurred as described above. The place to be searched is particularly described in ATTACHMENT A, and the things to be searched for and/or seized are described with particularly in ATTACHMENT B. Accordingly, your Affiant requests the issuance of a federal search warrant for white 2021 Volvo Xc90 bearing Arizona temporary plate 1251R91 and VIN# YV4BR0CL9M1756296 and any cellular phones found inside.

23. This affidavit was sworn telephonically before a United States Magistrate Judge legally authorized to administer an oath for this purpose.

_27 August_, 2021
Date

Agent Nathaniel Trueblood
United States Border Patrol

Telephonically sworn on the 27th day of August, 2021. @ 4:17 pm

HONORABLE DEBORAH M. FINE
United States Magistrate Judge